UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BRIAN C. DOWNING, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) No. 2:16-cv-00552-GZS |
| | ) |
| SELECT REHABILITATION, INC., | ) |
| | ) |
| Defendant | ) |

### *MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESS*

The plaintiff in this whistleblower employment action moves to exclude the testimony of defendant Select Rehabilitation, Inc.'s ("Select's") expert witness Michael Sciacca on the bases that the designation was deficient pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and that the anticipated testimony does not meet the standards of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *See* Plaintiff's Daubert/Kumho Motion To Exclude Testimony of Defendant's Experts Michael Sciacca and Sheryl Rosenfield ("Motion To Exclude") (ECF No. 26) at 1-2.[1] Select moves to supplement its opposing brief with evidence, including a supplemental report by Sciacca. *See* Defendant Select Rehabilitation[,] Inc.['s] Motion To Supplement Its Offer of Proof Pursuant to Federal Rule of Evidence 103(a)(2) ("Motion To Supplement") (ECF No. 38); Memorandum Dated June 23, 2017, from Michael Sciacca, MHA, MPT, re: Electronic Communication between Regional and in-house Director of Rehab ("Sciacca Report"), Exh. 1 (ECF No. 38-1) thereto. For the reasons that follow, I grant the Motion To Supplement but also grant the Motion to Exclude.

---

[1] During a hearing on June 27, 2017, Select's counsel withdrew Rosenfield's designation, leaving only that of Sciacca at issue.

## I. Manner in Which To Raise Disputes Over Sufficiency of Expert Designations

In both this case and a decision issued today in *DePaolo v. GHM Portland Mar, LLC, d/b/a Portland Marriott at Sable Oaks,* No. 2:16-cv-00468-NT (D. Me.), disputes over the sufficiency of expert designations were raised by way of motions filed in the absence of any attempt by the movants to meet and confer with opposing counsel in a good-faith effort to resolve those issues before court intervention. This was improper. In each case, as discussed below and in *DePaolo*, that impropriety proves not to be dispositive against the movants. However, on different facts, it could be. *See White v. Meador*, 215 F. Supp.2d 215, 221 (D. Me. 2002) (denying defendants' motion to strike expert designation in part on basis that they raised no issue with plaintiff or court regarding its insufficiency until months had passed and the case had been scheduled for trial; observing, "Counsel must at least give opposing counsel a timely opportunity to remedy omissions in the required designations before seeking assistance from the court in obtaining the necessary information, which should also be done well before the close of discovery.").

The Bar is reminded that a dispute over the sufficiency of an expert designation is a discovery dispute to be handled in the manner prescribed by Local Rule 26(b). That rule prohibits the filing of written discovery motions without the prior approval of a judicial officer and directs that "[a] party with a discovery dispute . . . first confer with the opposing party in a good faith effort to resolve by agreement the issues in dispute[,]" failing which "the moving party shall then seek a prompt hearing with a judicial officer by telephone or in person." Loc. R. 26(b).

## II. Select's Motion To Supplement

During the hearing held on June 27, 2017, Downing's counsel opposed Select's Motion To Supplement on the basis that Select had improperly filed the Sciacca Report as an attachment to a motion rather than serving it on Downing pursuant to Federal Rule of Civil Procedure 26(e)(2).

She added that, in her experience, an offer of proof typically is made at trial rather than by way of a motion such as that filed by Select. She argued that, in any event, the Sciacca Report was untimely.

Downing is correct that the Sciacca Report should have been served upon him as a supplemental expert disclosure pursuant to Federal Rule of Civil Procedure 26(e)(2), triggering the requirements of Local Rule 26(b). Yet, Select's motion to proffer evidence was not an improper discovery motion, but rather a motion to place evidence before the court prior to its ruling on Downing's motion to exclude.

As Select's counsel argued at hearing, in view of the pendency of the Motion To Exclude, the Sciacca Report and accompanying evidentiary materials were properly proffered pursuant to Federal Rule of Evidence 103(a)(2), which covers pretrial as well as trial rulings on motions to exclude evidence.

Rule 103 provides, in relevant part:

> **(a) Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
>
> ***
>
> **(2)** if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.
>
> **(b) Not Needing to Renew an Objection or Offer of Proof.** Once the court rules definitively on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Fed. R. Evid. 103(a)(2) & (b). Because Downing had filed a motion to exclude evidence, and Rule 103 applies to pretrial rulings, Select properly made a proffer of evidence to the court in advance of its ruling on Downing's motion.

For these reasons, I grant the Motion To Supplement. Downing's argument that the proffered evidence is untimely bears on the merits of his motion rather than that of Select. Accordingly, I address that point below.

### III. Downing's Motion To Exclude

#### A. Applicable Legal Standards

##### 1. Rule 26 Challenge

Federal Rule of Civil Procedure 26 provides, in relevant part, that "a party must disclose to the other parties the identity of any [expert] witness it may use at trial to present evidence[.]" Fed. R. Civ. P. 26(a)(2)(A). "A party must make these disclosures at the times and in the sequence that the court orders." *Id*. at (a)(2)(D). Both Rule 26(a)(2)(B) and the court's scheduling order provide that, if an expert witness is retained or specially employed to provide testimony in the case, or is a party's employee whose duties regularly involve giving expert testimony, the disclosure must contain six categories of information, although, pursuant to the court's scheduling order, that information need not be provided in the form of a written report prepared and signed by the expert. *See id*. at (a)(2)(B); Scheduling Order (ECF No. 9) at [2].

The six categories of information required to be disclosed include: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them;" and "(ii) the facts or data considered by the witness in forming them[.]" Fed. R. Civ. P. (a)(2)(B)(i)-(ii).

Rule 26 also states:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The movant bears the burden of demonstrating that a late and/or insufficient expert designation is either substantially justified or harmless. *See, e.g., United States Bank Nat'l Ass'n v. James*, Civil No. 09-84-P-JHR, 2010 WL 1416126, at *6 (D. Me. Apr. 5, 2010).

"The baseline rule is that the required sanction in the ordinary case is mandatory preclusion." *Harriman v. Hancock Cty.*, 627 F.3d 22, 29 (1st Cir. 2010) (citations and internal punctuation omitted). However, the court retains discretion to impose other sanctions in lieu of, or in addition to, mandatory preclusion. *See* Fed. R. Civ. P. 37(c)(1); *see also, e.g., Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77-78 (1st Cir. 2009) ("Preclusion . . . is not a strictly mechanical exercise. And, in its discretion, the district court may choose a less severe sanction. Where a district court does opt in favor of preclusion, we review that decision with reference to a host of factors, including: (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects – e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.") (citations and some internal quotation marks omitted).

### 2. *Daubert/Kumho* Challenge

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

5

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court designated trial judges as gatekeepers responsible for determining whether Rule 702's requirements are met in any given case. *See Daubert*, 509 U.S. at 597. Rule 702 assigns to the court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Smith v. Jenkins,* 732 F.3d 51, 64 (1st Cir. 2013) (citation and internal quotation marks omitted). "The proponent of expert testimony bears the burden of demonstrating that the evidence satisfies Fed. R. Evid. 702 by a preponderance of the evidence, as interpreted by Daubert and its progeny." *Linhares v. Buyers Prods. Co.*, Civ. Action No. 15-11881-LTS, 2016 WL 4599899, at *2 (D. Mass. Sept. 2, 2016). "The ultimate purpose of the Daubert inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue." *Id*. (citation and internal quotation marks omitted).

"[A] a court cannot rely on the jury to determine the relevance and reliability of the proffered testimony in the first instance; *Daubert* and its progeny place this responsibility in the hands of the district court." *Jenkins*, 732 F.3d at 65.

Downing assails both the relevance and the reliability of Sciacca's anticipated testimony, *see* Motion To Exclude at 3-9; however, I have focused on its relevance. "This requirement seeks to ensure that there is an adequate fit between the expert's methods and his conclusions[,]" addressing "the problem that arises when an expert's methods, though impeccable, yield results that bear a dubious relationship to the questions on which he proposes to opine." *Samaan v. St. Joseph Hosp.,* 670 F.3d 21, 32 (1st Cir. 2012).

6

## B. Factual Background

Downing filed the instant suit on November 1, 2016, alleging that, while employed by Select to work as an occupational therapist at Cove's Edge, a skilled nursing care and long-term care facility in Damarsicotta, Maine, he "repeatedly reported to Select that it was wrongfully billing Medicare for patient services that were not needed and that it was refusing to discharge patients who no longer needed services but for whom Select wanted to keep on billing." Complaint (ECF No. 1) at 1 & ¶¶ 13, 16. He complained that, in violation of the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 *et seq.*, and the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S.A. § 831 *et seq.*, Select fired him in retaliation for his repeated reporting of "billing practices he reasonably believed to be a violation of law" and "what he had reasonable cause to believe was an act or omission that constituted a deviation from the applicable standard of care for a patient by an employer charged with the care of that patient." *Id.* ¶¶ 1-2.

He alleged, *inter alia*, that Select hired an individual named Bobby Schaffer, a physical therapist who was not qualified to make decisions about occupational therapy ("OT") patients, to make and document decisions preventing the discharge of OT patients even if a treating therapist opined that they did not need additional services. *Id.* ¶¶ 30-34. He stated that Schaffer inappropriately made decisions based on only billing information and without reference to any treatment documentation and, at Select's direction, refused to communicate with therapists who had evaluated the patients. *Id.* ¶¶ 32-33. He alleged that Schaffer was removed from the discharge process after it was discovered that therapists were keeping copies of Schaffer's emails denying discharge, whereupon Select's Regional Manager, Robert Davis, began making those decisions, and therapists ceased receiving communications regarding them. *Id.* ¶¶ 35-36.

On December 12, 2016, the court issued a scheduling order setting, *inter alia*, deadlines of April 3, 2017, for the defendant's designation of experts and May 1, 2017, for the close of discovery. *See* Scheduling Order at [2].

On April 3, 2017, Select served Downing with the written expert designation of Sciacca, a licensed physical therapist and the Director of Operations for Zimmet Healthcare Services Group, LLC ("ZHSG"). *See* Defendant, Select Rehabilitation, Inc. Expert Witness Disclosure ("Initial Sciacca Designation"), Exh. A (ECF No. 26-1) to Motion To Exclude.

The designation included a section titled "Complete statement of all opinions the witness will express and the basis and reasons for them[,]" stating, in its entirety:

> The witness will testify that communications between Select's Regional Director and the Select staff at the Cove[']s Edge facility were appropriate, clinically based, instructional, and gave valuable guidance to ensure the beneficiary received entitled services. The witness will further testify that there was no indication of undue pressure to change treatment approaches specific to financial concerns. The witness will supplement his opinion based upon testimony and documents produced in the lawsuit.

*Id.* at Page ID ## 119-20. The designation listed the following as the facts or data considered by Sciacca in forming his opinions: (i) emails between Schaffer and Select's Director of Rehabilitation (Program Manager), (ii) applicable Medicare law and regulations, and (iii) the Medicare Benefits Manual. *Id.* at Page ID # 120.

By order dated April 27, 2017, I granted a motion by Select to amend the scheduling order, enlarging the parties' discovery deadline to May 31, 2017. *See* ECF Nos. 23, 25.

On May 3, 2017, Downing filed the Motion To Exclude, which was fully briefed as of May 26, 2017. *See* Plaintiff's Reply to Defendant's Opposition to the Motion To Exclude Expert Testimony ("Reply") (ECF No. 28). On May 29, 2017, I granted Select's motion for oral argument on the Motion To Exclude, which was scheduled for June 27, 2017. *See* ECF Nos. 29, 32, 34.

8

On May 30, 2017, I held a teleconference with counsel on separate discovery matters during which I further extended the discovery deadline to June 30, 2017. *See* ECF No. 46 at 4.

On June 23, 2017, four days before the scheduled oral argument and only a week before the expiration of the discovery deadline as twice extended, Select filed its Motion To Supplement, to which it attached the Sciacca Report of the same date, Sciacca's *curriculum vitae*, and copies of certain materials that Sciacca indicated he had reviewed in forming his opinions: a Therapy Services Agreement between Select and Cove's Edge, certain Schaffer emails, and the depositions of Smith, Schaffer, and Davis. *See* Motion To Supplement & Exhs 1-7 (ECF Nos. 38-1 to 38-7) thereto.

Sciacca stated, *inter alia*, that his report was "limited in scope to review of submitted electronic communications between the employees of Select Rehabilitation" and that "[d]eterminations and opinions are based [on] our extensive experience with industry norms and based on references to Medicare reimbursement policy." Sciacca Report at Page ID # 200. He added: "Note that this letter is not meant to serve as a commentary on patient care or the clinical efficacy of Select." *Id*.

He described his opinion as follows:

> Based on our extensive industry experience from both the Facility level and Outsource Therapy vendor space, as well as experience with Therapy vendors under Corporate Integrity Agreements ("CIAs"), ZHSG did not identify any inappropriate communication between the Regional Director and the Select facility staff. All correspondences between staff were clinically based, as required by Medicare, as well as various other regulatory agencies. Communications appeared to be instructional with recommendations for interventions and for the purposes of education for line therapy staff. ZHSG did not identify any of the communications to include undue pressure to change treatment approaches specific to financial concerns. Although facility staff may have been defensive specific to clinical judgments, in our opinion the Select Regional Director adequately justified his clinical position and gave valuable guidance to ensure the beneficiary received entitled services. Furthermore, this level of clinical support appeared consistent with the education needed to address the changes to the Medicare Benefits Manual,

> specific to updates resulting from the *Jimmo vs. Sebelius Settlement Agreement* in which Medicare affirmed that beneficiary progress alone was not required to receive the therapy entitlement.

*Id*. at Page ID ## 200-01.

He cited the following in support of his opinion:

1. Two sections of the Medicare Benefits Manual – Transmittal 179, setting forth what he described as "a significant clinical reversal of how therapists determined discontinuation of skilled therapy services, particularly in a skilled nursing facility[,]" and Section 220.2, bearing on determination of the reasonableness and necessity of skilled care services;

2. Portions of the Therapy Services Agreement between Select and Cove's Edge requiring that Select ensure compliance with government regulations, including Medicare guidelines, in connection with which he stated, "Again, I reiterate my opinion that the communications I reviewed between Select supervisors and therapy staff were consistent with Select's responsibilities as agreed upon in the Therapy Services Agreement"; and

3. Section 483.85(c)(6) of the updated Long-Term Care Facility Requirements of Participation, setting forth the requirement that reasonable regulatory compliance steps be taken, in connection with which he stated that he reiterated his finding of "no inappropriateness specific to the communications reviewed[,]" noting, "Select appears to be appropriately focused on the beneficiary's clinical conditions and provides its staff with valuable guidance from the corporate level."

*Id*. at Page ID ## 201-03.

On June 27, 2017, I heard oral argument on both the Motion To Exclude and the Motion To Supplement, as well as other pending discovery disputes. *See* ECF No. 39. On July 27, 2017, I issued orders removing this case from the August Trial List, directing the Clerk's Office to

schedule a teleconference with the parties regarding new discovery issues that had been raised on July 6, 2017, and stating that final pretrial deadlines would be reestablished once that discovery teleconference was held. *See* ECF Nos. 47, 49. During that teleconference, held on August 8, 2017, I enlarged the parties' discovery deadline *nunc pro tunc* to August 31, 2017. *See* ECF No. 52.

### C. Discussion

#### 1. Rule 26 Challenge

As a threshold matter, Downing seeks exclusion of the Sciacca testimony on the basis that Select's April 3, 2017, designation failed to set forth the required "complete statement of all opinions the witness will express and the basis and reasons for them" or "the facts or data considered by the witness in forming them[.]" Fed. R. Civ. P. (a)(2)(B)(i)-(ii).

He points out that Select neither identified the specific Medicare guidelines or rules on which Sciacca relied to reach his conclusions nor explained his reasons for so concluding. *See, e.g.*, Reply at 1-2. I agree that the designation is facially deficient in those respects. While the initial designation in *DePaolo* was pithy as well, it described Dr. Voss's expected opinion (that the actions of which DePaolo complained exacerbated an existing post-traumatic stress disorder ("PTSD") condition), the bases for them (that Dr. Voss planned to review the plaintiff's medical and mental health records and examine the plaintiff), and his expected reasons (that the complained-of actions caused DePaolo psychological harm, including severe emotional distress, which exacerbated his PTSD). *Compare also, e.g., Goodrich v. Sheehan*, No. 2:12-cv-388-JAW, 2014 WL 4843975, at *2 (D. Me. Sept. 28, 2014) (initial expert designation was sufficient when, although the defendants did not provide a detailed summary of the factual grounds and documents upon which expert relied, "they summarized the documents that he reviewed and set forth the facts,

as [the expert] understood them, and basic legal principles upon which he relied in forming the opinions expressed").

Moreover, the Sciacca Report, offered nearly three months after Select's expert designation deadline and only a week before the then-operative discovery deadline, highlighted the deficiency of the initial designation, disclosing for the first time (i) specific sections of voluminous Medicare materials on which Sciacca had relied, (ii) his reliance on a Therapy Services Agreement between Select and Cove's Edge, (iii) his reliance on an unredacted email communication disclosing a patient name that Downing's counsel represented never was produced to her client during discovery, (iv) rationales for his conclusions, and (v) an arguably broader opinion encompassing interactions with unnamed staff.[2] *See* Sciacca Report at Page ID ## 200-03. The burden on Select was heavy, in these circumstances, to demonstrate substantial justification or harmlessness should the court deem the initial Sciacca designation deficient and the Sciacca Report an improper supplement.

Yet, unlike the plaintiff in *DePaolo*, whose supplemental expert report was served on the opposing side approximately a month prior to the parties' discovery deadline, Select did not argue that its insufficient designation, supplemented by way of the Sciacca Report, was either substantially justified or harmless.

Beyond this, Downing's counsel made a compelling argument that the deficiencies were not harmless, stating that the untimely provision of the detail in the Sciacca Report one week prior to the close of discovery deprived her client of the opportunity to take Sciacca's deposition and/or

---

[2] In a section of his report titled "General Summary," Sciacca stated, after discussing the appropriateness of electronic communications between the Regional and in-house Director of Rehabilitation at Cove's Edge: "It also appears the in-house staff had the opportunity to respond with additional clinical information that may not be in the documentation to further review or render an opinion on the clinical conversation. Once that information was reviewed, the Regional Director at times provided clinical rationale and interventions to utilize and continue the service or, if the team agrees to a revised discharge plan." Sciacca Report at Page ID # 200.

12

use interrogatories or document requests to probe for more detail on the newly-expressed bases and rationale for his opinion and its apparently expanded scope.

As Downing's counsel contended, because the Sciacca Report materially expanded upon Sciacca's initial designation, it was not a proper supplement. As this court has recently explained:

> Supplementation as contemplated by Rule 26 is a method of correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure. If a supplemental expert disclosure presents a new theory of the case, the district court has the discretion to exclude it and if it represents a refinement, the expert should be allowed to testify.

*Maine Med. Ctr. v. William A. Berry & Son, Inc.*, 2:16-cv-00052-JDL, 2017 WL 1411478, at *2 (D. Me. Apr. 20, 2017) (citations and internal punctuation omitted). Here, as in *Berry & Son*, the offered supplement "does not fit comfortably within the contours of Rule 26(e)(2)." *Id*. "[I]t is not a refinement of [Sciacca's] initial expert disclosure and was not timely under Rule 26." *Id*. "Accordingly, its admissibility is properly analyzed under Rule 37(c)." *Id*.

In the absence of any attempt by Select to demonstrate substantial justification or harmlessness, the baseline sanction is preclusion of the Sciacca testimony. *See* Fed. R. Civ. P. 37(c)(1). Yet, mindful that "[p]reclusion . . . is not a strictly mechanical exercise[,]" *Esposito*, 590 F.3d at 77, I have considered whether a lesser sanction is warranted. I conclude that it is not.

First, while it is true that Downing did not place Select on notice of any asserted deficiency in its initial expert designation until he mentioned the point in passing in a *Daubert/Kumho* motion filed approximately a month after the designation, I find, as I do on similar facts in *DePaolo*, that the denial of his motion on that basis alone is unwarranted. While, in *White*, the court denied a motion to strike an expert designation in part on the basis that the movants had raised no issue with the opposing side or the court regarding the designation's insufficiency until months had passed and the case had been scheduled for trial, in this case discovery was not due to close for a month

13

when Downing improperly raised the point in a motion, enabling the court to treat it, in effect, as a discovery dispute pursuant to Local Rule 26(b).[3]

Examination of the relevant factors, *see Esposito*, 590 F.3d at 77-78, does not tip the balance in favor of a lesser sanction than preclusion of the Sciacca testimony. While Select has no history of delay or dilatory tactics, for the reasons discussed below in the context of Downing's *Daubert/Kumho* challenge, its need for the evidence is not great, and it offers no substantial justification for its inadequate initial designation or its delay in producing the Sciacca Report until nearly three months after its expert designation deadline, one week before the close of discovery, and four days before oral argument on the Motion To Exclude. Finally, Select does not attempt to argue that the deficiency was harmless, and Downing persuasively argues that it was not.

In *DePaolo*, by contrast, DePaolo's need for the expert testimony was great, and he had shown substantial justification for any initial deficiency in his designation. *Compare also, e.g.*, *Downeast Ventures, Ltd. v. Washington Cty.*, 450 F. Supp.2d 106, 113 (D. Me. 2006) (holding that tardy designation of expert witness was harmless, and hence permissible, when, *inter alia*, the plaintiff had "a critical need to present evidence of the value of the equipment it contends was wrongfully seized[,]" "[i]ts justification for the non-disclosure was confusion about the need for expert disclosure of a corporate employee valuation witness, a somewhat murky area of law[,]" and the defendants "should be able to overcome the adverse effects of the non-disclosure").

For the foregoing reasons, I exclude Sciacca's testimony pursuant to Rule 37(c)(1).

---

[3] While Downing made only a passing reference to his Rule 26 argument in his Motion To Exclude, *see* Motion To Exclude at 1, and elaborated on it in his reply brief, *see* Reply at 1-2, the issue was discussed at length during the June 27, 2017, hearing, affording Select an opportunity to respond to the Rule 26 arguments raised in Downing's reply brief and by his counsel during the hearing.

## 2. *Daubert/Kumho* Challenge

In the alternative, I conclude that exclusion of the Sciacca opinion is warranted on the basis of Select's failure to demonstrate its relevance to the task at hand. *See Koninklijke Philips N.V. v. Zoll Med. Corp.*, Civil Action No. 10-11041-NMG, 2017 WL 2636041, at *1 (D. Mass. June 19, 2017) ("The crux of a Daubert challenge is . . . whether the proposed expert testimony 'fits' the facts and issue[s] of the case.") (citation omitted).

Select designated Sciacca to testify that "communications between Select's Regional Director and the Select staff at the Cove[']s Edge facility were appropriate, clinically based, instructional, and gave valuable guidance to ensure the beneficiary received entitled services" and that "there was no indication of undue pressure to change treatment approaches specific to financial concerns." Initial Sciacca Designation at Page ID ## 119-20.

Downing claims that, in contravention of the MWPA and the MHRA, Select retaliated against him for repeatedly reporting billing practices that he reasonably believed to be violations of the law and acts or omissions that he reasonably believed deviated from patient care standards. *See* Complaint ¶¶ 2, 112-31. He alleges that Select violated (i) 26 M.R.S.A. § 833(1)(A) of the MWPA and 5 M.R.S.A. § 4572(1)(A) of the MHRA (Count I), (ii) 26 M.R.S.A. § 833(1)(E) of the MWPA and 5 M.R.S.A. § 4572(1)(A) of the MHRA (Count II), and (iii) Maine's personnel file law, 26 M.R.S.A. § 631, for refusing to produce his entire personnel file to him (Count III). *See id.* ¶¶ 112-37. The cited section of the MHRA adds nothing of substance to Downing's MWPA claims; it makes conduct violative of the MWPA also unlawful pursuant to the MHRA. *See* 5 M.R.S.A. § 4572(1)(A).

The cited sections of the MWPA prohibit an employer from, *inter alia*, discharging an employee because:

> A. The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States;
>
> ***
>
> E. The employee, acting in good faith and consistent with state and federal privacy laws, reports to the employer, to the patient involved or to the appropriate licensing, regulating or credentialing authority, orally or in writing, what the employee has reasonable cause to believe is an act or omission that constitutes a deviation from the applicable standard of care for a patient by an employer charged with the care of that patient. For purposes of this paragraph, "employer" means a health care provider, health care practitioner or health care entity as defined in Title 24, section 2502.

26 M.R.S.A. § 833.

"Under Maine law, the cause of action for whistleblower retaliation consists of three elements: (1) that the employee engaged in a protected activity; (2) that the employer took adverse employment action against the employee; and (3) that there was a causal connection between the two." *Brady v. Cumberland Cty.*, 2015 ME 143, ¶ 32, 126 A.3d 1145, 1156, *as corrected* (Mar. 8, 2016). "Because of the way a WPA claim is defined under Maine law, . . . the employee must not only produce evidence that she engaged in a protected activity and later suffered an adverse employment action, but in the first instance she must also produce some evidence of the employer's unlawful motivation." *Id.* ¶ 33, 126 A.2d at 1156. "Causation is an essential element of a claim of WPA retaliation, and so the parties are entitled to present evidence of the reasons for the employer's action[.]" *Id.* ¶ 37, 126 A.2d at 1158.

For several reasons, Sciacca's proposed testimony is ill-fitted to the facts and issues of this case.

First, it plainly has no bearing on Count III, which concerns failure to release personnel file contents.

Second, it can have no possible bearing on Count II, which concerns retaliation on account of an employee's report concerning what he or she "has reasonable cause to believe is an act or omission that constitutes a deviation from the applicable standard of care for a patient by an employer charged with the care of that patient." 26 M.R.S.A. § 833(1)(E). Sciacca offers no opinion on whether Select deviated from applicable standards of patient care, let alone whether Downing reasonably believed that it did. *See* Sciacca Report at Page ID # 200 ("Note that this letter is not meant to serve as a commentary on patient care or the clinical efficacy of Select.").

Third, it has little, if any, bearing on Count I, concerning retaliation against an employee for a report concerning what he or she "has reasonable cause to believe is a violation of a law or rule[,]" 26 M.R.S.A. § 833(1)(A). As Downing's counsel contended at oral argument, Sciacca offers no opinion on the relevant question: whether her client reasonably believed Select's billing practices were illegal. Downing need not prove that those practices were in fact illegal, and proof by Select that they were legal would not be dispositive against his claim pursuant to section 833(1)(A) (Count I). *See Ingalls v. Walgreen E. Co.*, Civil No. 10-cv-242-PB, 2011 WL 777948, at *5 (D.N.H. Mar. 1, 2011) (denying plaintiff's motion to compel production of evidence bearing on the asserted truth of his alleged whistleblowing statements; noting that, for purposes of his New Hampshire Whistleblowers' Protection Act claim, "whether or not [defendant employer] actually violated any law is beside the point; what matters is whether plaintiff had reasonable cause to believe that [defendant employer] had violated the law").

To the extent that an opinion that Select's billing practices were lawful would be helpful to a trier of fact in determining whether Downing reasonably believed the converse, Sciacca does not offer such an opinion. He claims to opine solely on the appropriateness of certain "electronic communications between the employees of Select Rehabilitation[.]" Sciacca Report at Page ID

# 200.  Yet, as Downing's counsel pointed out at oral argument, the Complaint indicates that her client did not rely solely on electronic communications in forming the belief that his employer's billing practices were illegal.  He alleges, *inter alia*, that (i) he observed changes in the rate of patient discharges after Select began managing Cove's Edge, (ii) Schaffer refused to talk to therapists treating patients, (iii) Select banned such communications, (iv) a different Select employee, Sue Martin, told the team that discharge requests would not be approved unless there was another Medicare B patient to replace the one being discharged, and (v) Select "push[ed] therapists to provide therapy – whether or not needed – to patients[.]"  Complaint ¶¶ 22, 33, 46, 50.

In the circumstances, Select fails to demonstrate that Sciacca's testimony sufficiently fits the facts and issues of this case to be helpful to the trier of fact.

## IV.     Conclusion

For the foregoing reasons, I **GRANT** Select's Motion To Supplement and **GRANT** Downing's Motion To Exclude.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 31st day of August, 2017.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge